[No. 2,214.]

# THE PEOPLE OF THE STATE OF CALIFORNIA EX REL. PETER CHRYSTAL *v.* JOHN COOK ET AL., LOAN COMMISSIONERS OF SANTA CLARA COUNTY.

TREASURY NOTES A LEGAL TENDER FOR COUNTY BONDS.—Bonds issued by a county, either after or before the passage of the Legal Tender Act of Congress, made payable in money generally, and issued under a law which does not require payment to be made in any specified kind of money, may be paid in legal tender notes.

THE Legislature, in April, 1861, passed an Act, authorizing the County of Santa Clara to subscribe two hundred thousand dollars to the capital stock of the San Francisco and San José Railroad Company, and the county, on the 1st day of June, 1861, subscribed for the stock. The Act directed the subscription to be paid in the bonds of the county at their par value. The Act made the Chairman of the Board of Supervisors, the Auditor, and Treasurer of the county, Loan Commissioners, to issue the bonds, payable in fifteen years, with interest at seven per cent per annum, and said Commissioners issued the bonds. The Act did not require the bonds to be made payable in any particular kind of money, and they were made payable in money generally. The Act also directed a certain tax to be levied each year to pay the interest, and an additional tax to ultimately pay the principal, and directed, that when there was four thousand dollars or more in the Fund raised by said taxes, and the dividends, issues, and profits of the stock, over and above sufficient to pay the interest, that the said Commissioners should advertise to redeem bonds at not more than par value, and if none were offered at par or less, that they should advertise to redeem bonds by numbers at par, and that after four weeks the bonds indicated should cease to draw interest. On the 4th day of April, 1864, the Legislature passed an Act, authorizing the Supervisors of Santa

Clara County to sell said stock and pay the money into said Fund, and directing that the same should be applied to the redemption of the bonds, as directed in the old Act.  The Supervisors, on the 24th day of December, 1867, sold the bonds for one hundred thousand dollars in legal tender notes, and paid the same into the Fund.  The Loan Commissioners advertised for bids for redemption of bonds, and all bids being rejected, then advertised four weeks to redeem by numbers, and among the numbers were bonds to the amount of twenty-one thousand dollars held by Peter Chrystal.  Chrystal then, as his bonds ceased to bear interest, presented the same, and demanded payment of the same in gold coin, which was refused.  He then applied for a writ of mandate, to compel the Loan Commissioners to pay his bonds in gold coin.

The other facts are stated in the opinion.

*Calhoun Benham,* for Petitioner.

*D. W. Delmas,* for Respondent.

By the Court, RHODES, J.:

The application for a mandamus to compel the Loan Commissioners to pay in gold coin the bonds of the petitioner having been denied, on the ground that it did not appear that there was any gold coin in the Loan Fund, the petitioner moves the Court that the judgment be modified, by ordering the Loan Commissioners "to rescind their action in calling in the bonds for payment, and to make publication in the county newspaper to that effect."  The petition, as amended by the stipulation, shows that there is not, and never has been, in the Loan Fund, any gold coin which might be applicable to the payment of the principal of the petitioner's bonds; but that there was, at the time when the notice was published by the Loan Commissioners, legal

tender notes in the Fund, sufficient for the satisfaction of those bonds, and that the same still remain in that Fund.

The ground taken by the petitioner is that his bonds are payable in gold coin only, and that, as there was no gold coin in the Loan Fund, the action of the Loan Commissioners should be set aside as unauthorized and void.

The question whether the relief now sought may be obtained in a proceeding for a mandamus may be waived, in order that the real controversy between the parties may be settled. A part of the bonds were issued on the 25th day of February, 1862—the day on which the first Act of Congress, making treasury notes legal tender, was approved, and the remainder of the bonds were issued on a subsequent day. The bonds are not payable in any specified kind of money. It was decided by the Supreme Court of the United States, in *Knox* v. *Lee* and *Parker* v. *Davis,* 12 Wallace, 457, that the Act of Congress above referred to, and the other Acts known as the Legal Tender Acts, are constitutional, when applied to contracts, whether made before or after their passage.

We are content to accept, without further discussion, the decision in those cases as a final settlement of that vexed question.

The bonds purport to be payable in money generally, and as there is nothing in the Act under which they were issued which requires payment to be made in any specified kind of money, the Act authorizing and requiring the Board of Supervisors to transfer to the Loan Fund the sum of one hundred thousand dollars in treasury notes, which was received on the contract for the sale of the stock in the railroad company belonging to the county, was valid, and such money was applicable to the redemption of the petitioner's bonds.

Motion denied.

CROCKETT, J., concurring:

I concur in the judgment, on the ground that recent decisions of the Supreme Court of the United States affirm the constitutionality of the Legal Tender Act; and whilst dissenting from the reasoning by which that conclusion is reached, I consider it to be the duty of this Court to acquiesce in the decision, so long as it remains unreversed.

WALLACE, C. J., dissenting:

I dissent from so much of the opinion as holds that it is within the constitutional authority of Congress to compel creditors to receive the notes of the United States in payment of debts. The reasoning upon this question, to be found in the dissenting opinions of the Chief Justice and of Mr. Justice FIELD, in *Knox* v. *Lee,* 12 Wallace, S. C. U. S. 457, is not to be refuted, except upon the assumption that the legislative power of Congress is something more than that granted to it in the Federal Constitution.